UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ROBERT FERN, JR., *Plaintiff,* | ) | |
| *vs.* | ) | 1:11-cv-00182-JMS-DML |
| MICHAEL J. ASTRUE, Commissioner of Social Security *Defendant.* | ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Robert Fern applied for disability insurance benefits ("DIB") and Supplemental Security Income Benefits ("SSI") through the Social Security Administration ("SSA") in February 2007. [R. 167-174.] After a series of administrative proceedings and appeals, including a hearing in October 2009 before Administrative Law Judge ("ALJ") L. Zane Gill, the Commissioner finally denied his application. The Appeals Council denied Mr. Fern's timely request for review of the ALJ's decision, rendering that decision the final one for the purposes of judicial review. 20 C.F.R. § 404.981. Mr. Fern then filed this action under 42 U.S.C. § 405(g), requesting that the Court review the ALJ's denial.

**BACKGROUND**

**A. Pertinent Medical Evidence**

Mr. Fern contends that he has been disabled since April 2006 after he suffered a work-related injury when a front-end load truck hit him in the back while he worked road construction. [R. 284; dkt. 16-7 at 32.] The next month, orthopedic surgeon Dr. Christo Koulisis diagnosed Mr. Fern with a herniated disc at the L5-S1 level of his spine with resultant left leg pain. [R. at 284-85; dkt. 16-7 at 32-33.] Dr. Koulisis surgically removed the herniated disc in June 2006, and Mr. Fern reported resolution of his leg pain by the following week. [R. 279, 284-85; dkt. 16-

7 at 5-27, 31-32.] In July 2006, Mr. Fern again complained of recurrent left leg pain when walking, and Dr. Koulisis indicated that he "may work on a sedentary basis." [R. 280-81; dkt. 16-7 at 28-29.] In November 2006, Mr. Fern began seeing Dr. Thomas Lazoff, a physical medicine and rehabilitation specialist, and he started physical therapy the next month. [R. 302; dkt. 16-7 at 50.] Over the next years, Mr. Fern continued to undergo orthopedic therapy and pain management for his back condition.

Besides being treated for his back condition, Mr. Fern also sought mental health treatment the following year and received various diagnoses and treatment. First, in April 2007 Mr. Fern was evaluated by consulting psychologist Dr. Marilyn Nathan. [R. 399-406; dkt. 16-8 at 13-20.] Dr. Nathan diagnosed Mr. Fern with schizoaffective disorder and a reading disorder, and she assigned him a GAF score[1] of 45 to 50. [R. 403-05; dkt. 16-8 at 17-19.] She also noted that given the level of Mr. Fern's pain medication, her evaluation was not a valid estimate of his cognitive functioning. [R. 402; dkt. 16-8 at 16.]

In May 2007, Mr. Fern saw Carolyn Hunt at Associates in Mental Health. [R. 447; dkt. 16-8 at 61.] Mr. Fern reported that he and his wife had moved to Indiana to be closer to family; that he had few friends, and that he used to fight all the time in school. [*Id*.] He also informed Ms. Hunt of his need for back surgery, his increased irritability, worry, and tiredness, and his auditory, but not visual hallucinations. [R. 447; dkt. 16-8 at 61.] Ms. Hunt noted that he had been diagnosed with a learning disability and paranoia. She diagnosed Mr. Fern with

[1] A GAF score is a numerical assessment of psychological, social, and occupational functioning. The scale is 1-100. A GAF score in the range of 41-50 indicates "serious symptoms ... or any serious impairment in psychological, occupational, or social functioning (e.g. no friends, unable to keep a job)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., Text Revision 2000).

schizoaffective disorder and a reading disorder, and assigned him a GAF score of 48. [R. 451; dkt. 16-8 at 65.]

From May 2007 to August 2007, Mr. Fern saw Ms. Hunt several times for individual therapy. [R. 441-46, 463-67; dkt. 166-8 at 55-60, 77-81.] In May 2007, Mr. Fern indicated that he talked to his deceased mother. [R. 446; dkt. 16-8 at 60.] In June 2007, he reported that he talked more with his wife and went on family walks. [R. 443; dkt. 16-8 at 57.] He also told Ms. Hunt that he thought someone was going to come after him. [R. 443; dkt. 16-8 at 57.]

In June 2007, Mr. Fern's file was evaluated by Dr. Joseph Pressner, a non-examining state agency reviewing psychologist. [R. 427; dkt. 16-8 at 41.] He opined that Mr. Fern's limitations were not severe and only mildly limited his activities of daily living, social functioning, and concentration, persistence, or pace. [R. 427-39; dkt. 16-8 at 41-53.] In addressing Dr. Nathan's previous evaluation of Mr. Fern, Dr. Pressner noted that Dr. Nathan gave no medical opinion as to Mr. Fern's capacity to work, but that her GAF score range of 45-50 suggested severe deficits. [R. 439; dkt. 16-8 at 53.] Citing Mrs. Fern's statements in June 2007 that most of Mr. Fern's problems seemed related to pain, and her subsequent statements that Mr. Fern had no friends, but interacted appropriately with family, neighbors, and store personnel, Dr. Pressner concluded that "[t]he evidence fails to suggest a severely limiting mental impairment despite the GAF." [*Id.*]

In July 2007, Ms. Hunt completed a form assessment in which she rated Mr. Fern's abilities to make occupational, performance, and social adjustments as "poor" in most categories, although no definition was provided for that term. [R. 479; dkt. 16-8 at 93.] At the end of that form, she concluded that Mr. Fern's paranoid features made working around people very difficult and that he was very quick to react with rage and anger. [R. 480; dkt. 16-8 at 94.]

In February 2008, Mr. Fern saw Deborah May, CNS, at Associates in Behavioral Counseling (ABC). [R. 484, dkt. 16-8 at 98.] She reported that Mr. Fern withdrew from others and had an isolated lifestyle, anxious mood, flat affect, auditory hallucinations, and anhedonia, but noted that Mr. Fern had normal memory and attention. [R. 484; dkt. 16-8 at 98.] She diagnosed Mr. Fern with paranoid schizophrenia and assigned him a GAF score of 21. [R. 484; dkt. 16-8 at 98.] Over the next few years, Mr. Fern continued to see physicians and specialists for the above-diagnosed conditions.

**B. Vocational Expert Testimony**

At Mr. Fern's hearing in October 2009, the ALJ asked the VE what unskilled work was available for someone with Mr. Fern's background who had moderate limitations in activities of daily living and concentration, persistence and pace; mild limitations in social functioning and who could: lift, carry, push, or pull up to 40 pounds occasionally and 20 pounds frequently; stand or walk for a total of four hours and sit for a total of six hours in an eight-hour day with a sit-stand option at his workstation; never climb ladders, ropes, or scaffolds; never perform work that required more than concentrated exposure to unprotected heights and moving machinery; and occasionally stoop and bend. [R. 71-72; dkt. 16-2 at 72-73.]

The VE testified that such a person could perform the representative, unskilled sedentary jobs of surveillance monitor, ampoule sealer, and polisher for eyeglass frames, all of which were available in significant numbers statewide. [R. 73-74; dkt. 16-2 at 74-75.]

## DISCUSSION

This Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's (and ultimately the Commissioner's) findings. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), the Court must afford the ALJ's credibility determinations "considerable deference," overturning them only if they are "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted). If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. Otherwise the Court must generally remand the matter back to the Social Security Administration for further consideration; only in rare cases can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

To evaluate a disability claim, an ALJ must use the following five-step inquiry:

> (1) [is] the claimant … currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment … one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, …can [she] perform her past relevant work, and (5) is the claimant … capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted). After Step Three, but before Step Four, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which represents the claimant's physical and mental abilities considering all of the claimant's impairments. The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and, if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e).

Here, Mr. Fern's claims the ALJ committed various errors at Step 4. [Dkt. 21 at 17.] Specifically, Mr. Fern raises the following issues: (1) whether the ALJ properly incorporated his finding of a moderate degree of limitation in concentration, persistence, or pace in his hypothetical questioning and residual functional capacity, (2) whether the ALJ erred in finding that Mr. Fern had mild limitations in social functioning; (3) whether the ALJ properly evaluated

Dr. Nathan's medical opinion; and (4) whether the ALJ properly evaluated the credibility of Mr. Fern's symptom testimony. [*Id.*] The Court will consider each claim in turn.

**1. The ALJ's RFC Finding and Hypothetical Question to the VE**

Mr. Fern first argues that the ALJ erred in questioning the VE during his hearing in October 2009. [Dkt. 21 at 17.] Specifically, he claims that the ALJ's hypothetical question posed to the VE was inadequate under *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010), because it should have expressly included an additional limitation that Mr. Fern was moderately limited in concentration, persistence, or pace. [*Id.*]

To the extent that Mr. Fern contends that the ALJ neglected to incorporate that particular limitation in his RFC finding and hypothetical, [*id* at 17-19], the Court disagrees with that assertion. A review of the hearing transcript shows that the ALJ's hypothetical questioning explicitly included a moderate limitation in concentration, persistence, and pace, [R. 72, dkt. 16-2 at 73), and Mr. Fern concedes this point in his reply brief, [dkt. 30 at 1]. It is apparent from the record that the ALJ fully incorporated his RFC finding into his hypothetical question to the VE, and after the VE identified unskilled, sedentary jobs that Mr. Fern could perform, the ALJ relied, as he should, on the VE's response. [R. 71-73; dkt. 16-2 at 72-74.] *See Schmidt*, 496 F.3d at 846. ("[W]here, as here, a hypothetical question accurately identifies the limitations credibly supported by the record, the VE's response to that question is substantial evidence in support of the ALJ's decision."). Therefore, the Court finds meritless Mr. Fern's challenge on this ground.

**2. The ALJ's Finding that Mr. Fern Had Mild Limitations in Social Functioning**

Mr. Fern also argues that the ALJ improperly concluded that he had mild limitations in social functioning. [Dkt. 21 at 19.] Specifically, Mr. Fern contends that that the ALJ did not

adequately address other evidence that would support an alternate finding. [*Id.*] The Court disagrees.

A review of the ALJ's explanation of his decision shows that the ALJ considered the record as a whole, and that his decision is supported by substantial evidence in the record. Within his decision, the ALJ explicitly refers to the various medical and nonmedical evidence he considered in making his finding. [R. 20-21; dkt. 16-2 at 21-22.] While the ALJ acknowledged the evidence indicating Mr. Fern's challenges in social functioning, including his belief that his friends and relatives spoke disparagingly of him and his tendency to become angry at co-workers, [R. 20-21, 237; dkt. 16-2 at 21-22; 16-6 at 58], he also considered that Mr. Fern traveled to Ohio every four months to see family, talked with family on a weekly basis, and moved to Indiana to be closer to family, [R. 21, 230, 237; dkt 16-2 at 21; 16-6 at 29-38]. Because the ALJ's decision was based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Barnett*, 381 F.3d at 668, the Court finds that there is substantial evidence to support the ALJ's finding and preclude remand. 42 U.S.C. § 405(g).

To the extent that Mr. Fern argues that the ALJ erred because he "did not mention medical evidence that supported more than mild limitations in social functioning," [dkt. 21 at 20], and apparently discounts Ms. May's and Ms. Hunt's opinion that Mr. Fern has paranoid features that would make work difficult, the Court finds his argument without merit. Because the ALJ discussed both Ms. May and Ms. Hunt's findings, and the weight he afforded those opinions, [R. 23, 28-29, 32-33; dkt. 16-2 at 24, 29-30, 33-34], he has provided this Court with an adequate basis for review of his reasoning. *See Dixon*, 270 F.3d at 1176 ("[An ALJ] is not required to address every piece of evidence or testimony, but must provide some glimpse into her reasoning." (citation omitted)).

The ALJ's decision is not subject to remand merely because he did not address each piece of evidence individually. *Id*. The Court's review is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's findings, *Barnett*, 381 F.3d at 668, which it does here. *See Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002) ("The ALJ need only build a bridge from the evidence to his conclusion." (citations and internal quotation omitted)); *Glenn v. Secretary of Health & Human Services*, 814 F.2d 387, 391 (7th Cir. 1987) ("[C]ourts will rarely be able to say that the administrative law judge's finding was not supported by substantial evidence.").

There is substantial evidence in the record to support the ALJ's finding and preclude remand, 42 U.S.C. § 405(g), and to the extent that Mr. Fern attempts to highlight evidence that would support an alternate decision, his argument is unavailing. *See Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992) ("The court should not supplant the agency's findings merely by identifying alternative findings that could be supported by substantial evidence."). *See also Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. (2004) ([T]he ALJ's decision, if supported by substantial evidence, will be upheld even if an alternative position is also supported by substantial evidence." (internal citation omitted)).

**3. The ALJ's Consideration of Dr. Nathan's Opinion**

Mr. Fern also argues that the ALJ erred in evaluating Dr. Nathan's opinion about the extent of his limitations. [Dkt. 21 at 21-22.] He contends that the ALJ misunderstood the GAF score Dr. Nathan assigned to him, and that had ALJ properly evaluated Dr. Nathan's opinion, he would have necessarily found that Mr. Fern was mentally incapable of work. [*Id*.]

An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does

not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Also, treating physician opinions are generally weighted more heavily than consulting physician opinions. 20 CFR § 416.927(d)(2). Opinions that are inconsistent with the "record as a whole" are generally weighted less heavily than opinions that are consistent. *Id.* at (d)(4). Additionally,"[a] statement by a medical source that [a claimant is] 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [the claimant is] disabled." *Id.* at (e) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner…"). Nevertheless, the Court notes that the ALJ is required to consult the advice of a medical expert before making his Step Three determination, *Barnett*, 381 F.3d at 670, but sometimes experts disagree, and the ALJ must make "a reasonable choice among conflicting medical opinions." *Leger v. Tribune Co. Long Term Disability Ben. Plan*, 557 F.3d 823, 829 (7th Cir. 2009) (quotations omitted).

Here, Mr. Fern contends that the ALJ erred in finding that the GAF score assigned to him by Dr. Nathan was generally consistent with the ALJ's findings at Step Three. [R. at 23; dkts. 21 at 21; 16-2 at 24.] While the ALJ stated in his opinion that Dr. Nathan's score "generally served as a more accurate depiction of Plaintiff's mental functioning than the score [of 21] proposed by Ms. May," [R. 23; dkt. 16-2 at 24], he also noted Dr. Pressner's opinion contradicting Dr. Nathan's finding, [R. 23; dkt. 16-2 at 24]. The ALJ's evaluation of Dr. Nathan's opinion in light of the conflicting opinions of Ms. May and Dr. Pressner was proper, *Leger*, 557 F.3d at 829, and the Court finds no error in the ALJ's ascription of weight to the conflicting opinions based on consistency with the "record as a whole," 20 CFR § 416.927(d)(2). Furthermore, because the GAF score is not the only factor an ALJ need consider in determining the extent of an

individual's disability, *see Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010), the Court finds no basis for remand in Mr. Fern's challenge on those grounds.

Mr. Fern also argues that Dr. Nathan's recommendations show that she found him to be disabled. [Dkt. 21 at 22.] He misapprehends Dr. Nathan's conclusions. While Dr. Nathan opined that Mr. Fern required individual therapy and medication and may need help in reading comprehension before he could be trained to work, [R. 405; dkt. 16-8 at 19], she gave neither an RFC opinion nor an opinion as to whether Mr. Fern's limitations were disabling. [R. 405-06; dkt. 16-8 at 19-20.] Even if Dr. Nathan had opined that Mr. Fern was disabled, such an opinion would not be dispositive. *See* CFR § 416.927(e) ("[A] statement by a medical source that [a claimant is] "disabled" or "unable to work" does not mean that [the Commissioner] will determine that [the claimant is] disabled.").

In making his RFC finding, the ALJ expressly considered Dr. Nathan's evaluation in light of the record as a whole, [R. 28; dkt. 16-2 at 29]. The ALJ therefore reasonably considered Dr. Nathan's opinion in reaching his RFC finding, [R. 20-23; dkt. 16-2 at pp 21-24], and the Court finds that Mr. Fern's challenge on these grounds does not merit remand.

**4. The ALJ's Credibility Finding**

Mr. Fern also claims that the ALJ erred in questioning Mr. Fern's credibility because of inconsistent statements he made about his limitations on sitting and standing, medical evidence of inconsistencies and over-exaggeration of symptoms, inconsistent testimony about concentration and auditory hallucinations, and inconsistent statements about whether he had visual hallucinations, [dkt. 21 at 22 (citing R. 24-25; dkt. 16-2 at 25-26)].

As stated earlier, this Court's review of credibility findings is a limited one. Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft*, 539 F.3d at 678, the

Court must afford the ALJ's credibility determinations "considerable deference," overturning them only if they are "patently wrong," *Prochaska*, 454 F.3d at 738 (quotations omitted).

Mr. Fern first points out that the ALJ mentioned, among other evidence, Mr. Fern's display of positive Waddell's signs. [Dkt. 21 at 22.] Although Mr. Fern is correct that Dr. Lazoff found only two positive Waddell's signs, rather than the three required for a positive finding of symptom exaggeration, [R. 301; dkt. 16-7 at 49; dkt. 21 at 25], the ALJ's overall assessment of Mr. Fern's credibility was not patently wrong in light of the other substantial evidence supporting his adverse credibility finding. Specifically, the ALJ cites to several pieces of evidence to support his finding, including that Mr. Fern exaggerated his symptoms or performed tests with poor effort, [R. 24-35; dkt. 16-2 at 25-36], including the FCE therapists report that Mr. Fern's shoulder and overhead lift were not completed and invalid due to Mr. Fern's self-limiting behavior, a physical therapist's observation that Mr. Fern walked with an exaggerated gait, engaged in self-limiting behavior, had a negative attitude toward exercise, and required much encouragement, the report that Mr. Fern did not give full effort on an EMG, and Dr. Lavallo's opinion that the record showed signs that Mr. Fern exaggerated his symptoms and engaged in possible drug-seeking behavior. [R. 24-35; dkt. 16-2 at 25-36.]

Although Mr. Fern also argues that the ALJ incorrectly characterized other statements as apparent inconsistencies, including Mr. Fern's statements about his ability to concentrate and the nature of his hallucinations, [dkt. 21 at 26], his argument is unavailing in light of this Court's limited standard of review. As discussed above, substantial evidence supports the ALJ's adverse credibility finding, and the Court cannot find the ALJ's assessment to be "patently wrong," as is required for a reversal, *Prochaska*, 454 F.3d at 738. *See also Kittelson v. Astrue*, No. 09-2281, 2010 WL 271726, *4 ("The ALJ's adverse credibility finding was not perfect. But it was also

not 'patently wrong.'") (internal citation omitted). Mr. Fern's challenges on these grounds are therefore without merit.

## CONCLUSION

Although Mr. Fern has raised several challenges to the ALJ's decision, the Court finds that those challenges have no merit given the limited standard of review that the Court must apply here. Therefore, the Court **AFFIRMS** the Commissioner's denial of benefits. Final judgment will be entered accordingly.

03/02/2012

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF:**

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Joseph W. Shull
jshull@joeshull.com